On the docket, 2-14-0871, the State of Illinois Plaintiff's Appellee, in the plaintiff's case, Rebollar-Vergara, defendant to penalty. Arguing on behalf of the defendant to penalty is Sarah J. Curry. Arguing on behalf of the plaintiff's appellee is Joan K. Kripke. Ms. Curry, you may proceed. Good morning. My name is Sarah Curry from the State Appellate Defender, and I represent Jose Rebollar. The evidence against Jose Rebollar was weak. As a result, beginning with the grand jury proceedings and culminating with its closing argument, the State attempted to bolster this weak evidence, first by telling the grand jury that Rebollar had confessed to the offense, which he had not, and then by arguing in closing argument without any basis that co-defendant Jose Garcia held the position of security within the gang, and as such, Rebollar knew Garcia had a gun and knew that he would use that gun to shoot Gabriel Gonzalez. I'll focus my comments this morning on the issues contained in arguments 1, 2, and 4. Rebollar was denied his right to due process, where the State secured the first-degree murder indictment through the false testimony of Officer Kenneth Mayer. Officer Mayer was the sole witness to testify before the grand jury. Mayer was asked only 28 questions, and aside from the two questions asking his name and where he was employed, he answered yes to the remaining 26 questions. Two of the questions that Mayer answered yes to were, quote, subsequently the two defendants were arrested. Answer yes. Then, quote, and they did make confessions. Is that correct? Answer yes. However, Rebollar did not make a confession. In fact, he repeatedly denied any involvement in the murder of Gonzalez. Well, he made certain admissions, did he not? Not to anything having to do with a first-degree murder. He admitted that he was there. He admitted that he made a comment at the counter regarding Gonzalez's hat. But he never admitted, and he firmly denied that he knew Garcia had a gun, that he knew Garcia was going to shoot Gonzalez, that he had anything to do with Garcia's plan. He repeatedly denied that, and the State was seeking an indictment for first-degree murders. To then inform the grand jury that he's confessed, that said he's confessed a first-degree murder. I mean, the State did inform, or the witness testified, that Garcia was the one that pulled the trigger, correct? Correct. I mean, there was never any indication that your client pulled the trigger or actually committed the murder, correct? I mean, actually did the shooting. Correct. But the officer testified that Rebollar confessed to the offense for which they're seeking the indictment. At that point, the jury can close its ears. They have probable cause. They just heard that the defendant has confessed to the offense for which the State is seeking an indictment. They don't have to hear anything else. If someone makes admissions to being involved in a common design to injure this individual, theoretically, wouldn't that be a confession? But Rebollar did not confess to being in a common design with Garcia. He repeatedly denied that. No, he admitted that he went there with Garcia. He admitted that he and Garcia were gang members. He said he was a gang member. In the past, Garcia was a gang member, both Latin kings. He admitted he confronted the victim, who was wearing what he thought was a different gang hat or wearing it a different way than he should have been, that he wanted to fight the guy that they were arguing. The video is pretty clear that when they're walking outside the store, your client is in the lead and the main aggressor toward this victim. What I'm getting at is, when do admissions turn into a confession if, in fact, we're talking about the common design issue and not actually pulling the trigger? Well, the jury, the grand jury was not told any of what you just said, which may have been more beneficial for them to hear because he did not confess to first degree murder, which he was seeking the indictment for. He did say that he made the comment at the store that he walked out, that he was looking to fight the guy. But that's not what the state told the grand jury. The state told the grand jury that he confessed. Did the state tell the grand jury that there was a common design between the two? The state or the grand jury was not told anything about accountability. And for all intents and purposes, it looked like they were seeking an indictment as a principle because the jury was not told anything about accountability. So how the jury was supposed or the grand jury was supposed to make this leap to some common design plan. The jury doesn't know anything about common design. If there's only one gun and one murder weapon and one person shooting, how could it be anything other than accountability that your client was indicted under? A grand jury doesn't know what accountability is without being instructed on the law of accountability. All they were told was he confessed to first degree murder. How could they not return indictment? It doesn't matter if it's a principle or as an accomplice. He said that he did. He said that he was involved in the murder according to what the grand jury was told. If we affirm this, then would this case stand for the proposition that there is no error insofar as the grand jury being told that a defendant who has not confessed has in fact confessed so long as there is some evidence of some connection between the actual perpetrator and this individual without explanation as to how, what, or to what extent the connection is? Well, aside from the evidence or the testimony that he had confessed, there was very, very little other evidence that would lead to a probable cause finding. If you take out the confession and the other false testimony that walked out of the store, then you have that Rabilar and Garcia were in the store at the same time as Gonzalez, that one of them made a comment about Gonzalez's hat, that they walked out of the store while only Garcia was flashing gang signs. And once out of the store, Garcia pulls out a gun and shoots Adam 10 times, hitting him once and killing him. If that was all that the grand jury was told, they would not have been able to find probable cause to believe that Rabilar committed first degree murder. And for that reason, his due process rights were violated and the indictment should have been dismissed and his convictions should be reversed on that basis. Moving on to argument two, the state failed to prove that Rabilar was accountable for the first degree murder of Gonzalez. A person is legally accountable for the conduct of another when either before or during the commission of an offense with the intent to promote or facilitate the commission of that offense agrees or attempts to aid another person in the planning or commission of the offense. And to prove the intent element, the state needs to prove beyond reasonable doubt that the defendant shared the criminal intent of the principal or that there was a common criminal design. Rabilar should not be held accountable for the spontaneous act of Garcia. Rabilar and Garcia did not have a shared intent to murder Gonzalez, nor did they engage in a common criminal design. Rabilar's intent was to engage Gonzalez in a fistfight. Unbeknownst to Rabilar, Garcia's intent was to shoot and kill Gonzalez. They did not have a shared or common intent. To shoot or grievously harm. True. There was no evidence that Rabilar specifically intended to aid and abet Garcia in the murder of Gonzalez. And in fact, he did nothing to aid or abet Garcia in the murder of Gonzalez. We need to look at defendant's knowledge. What did the defendant know about the principal's criminal intentions? You cannot share an intent to promote or facilitate a commission of crime when you don't even know that that crime is going to happen. Well, it's pretty clear that the state did proceed under a common design theory, correct? Correct. And how is this case different than Fernandez? Fernandez is a classic common criminal design case where a number of people agree to some and in the course of that criminal enterprise, some maybe unforeseen or unknown additional crime occurs. Then the person is accountable to the principal for that additional crime. Here, there was never an original agreement. There was no opportunity to make an original agreement or common design. Well, there doesn't have to be an agreement for common design. You don't have to sit around and actually say for common design, okay, we're going to go and I'll beat this guy up. The circumstances can show that they come into this place, they didn't know the victim was going to be there. Now there's a rival gang member in this place and there the common design arises to beat the crap out of this guy. And it turns out the other guy has a gun unbeknownst to your client. Well, they come to the store not looking for any trouble. They have no idea that Gonzalez is going to be there. Gonzalez, as it turns out, is not even a gang member and Revellar recognized him from an earlier bar fight. And that's what his beep was about. His beep was not about gang banging. But he did confirm about the gang. He did tell him to fix his shit or whatever. Which he said was trash talking, which he really didn't think as he wasn't looking for gang banging. He was going back to this earlier bar fight that they had had. And that's what he was looking to do is go out and fight this guy again because they had had this earlier disagreement. And between the counter and the parking lot, there was not enough time for Garcia and Revellar to come to some common understanding because they didn't know what the other's intentions were. All the cases require something a little more than this. There's just nothing here that shows the common design. And in fact, there wasn't a common design because Revellar continually stated he had no idea that Garcia had a gun. He had no idea he was going to pull out that gun and shoot him. Well, again, I mean, that's been repeated throughout the briefs and everything. But that doesn't matter under Fernandez and the cases cited in Fernandez. It doesn't matter whether your client knew that he had a gun or whether he was going to pull the gun out. If there was a common design and your client and Garcia killed him in furtherance of the common design, that's it. There wasn't a common design. I know, I'm just saying. But whether he knew there was a gun is really of no consequence. But there was no common design here where they had no idea what the other one was thinking. They never came to a common design. They never had a common agreement or design or what have you. It doesn't have to be words, but it has to have something. There has to be something more. I mean, the classic Fernandez and all the common design cases show an agreement to some original thing, a plan, a design. We're going to go do this illegal thing, and then something else comes out of that. Something in the nature of a conspiracy that runs amok? Something like that. But here, there was nothing. There was no plan from the beginning that this shooting came out of that Reveler should be held accountable for, because there was nothing. And the state tried to enter the gang evidence to show this common design. But as Reveler consistently stated, this wasn't about gang banging. And he was trying to avenge this earlier fist fight that he had had with Gonzalez. So the gang evidence was not sufficient to establish a common design. Well, I mean, that's if you believe your client. I mean, we're looking at sufficiency of the evidence here under the Collins standard. So you keep going back to what your client testified to or what your client said in the statements. And whether the jury believes that or not is really of no consequence. But the state didn't present any evidence to the contrary, that Garcia and Reveler knew this guy as some gang member and they banded together to go and kill him because he was a rival gang member. The state didn't present any evidence to that. So we're left only with Reveler's statement that this wasn't about gang banging, that he was on his own plan to avenge this earlier bar fight. But couldn't the jury view the video and draw their own conclusions to the contrary of what your client's position was? I think that the video supports Reveler's statement. I appreciate that that's how you view it, but isn't under the standard that we have to apply. Could the jury view that and determine otherwise? Certainly the jury could do that. But under the requirements of the common design plan, the video doesn't show a design plan. There has to be something between Garcia and Reveler for him to be held accountable for Garcia's acts. And there is nothing in the video from the counter to the parking lot that shows that they were in this together. Yes, they're walking side by side, but there's nothing in the record that shows that they have a common design, a common understanding to do something and that this murder occurred as a result of that. This case is directly on point with the First District's decision in People v. Estrada, where the defendant was a passenger in a car that pulled up in front of a building where two men were sitting. The defendant and the occupants of the car exchanged gang signs and words with the two men, and the defendant got out of the car with a tire iron to threaten the two men. And in the meantime, one of the other passengers of the car pulled out a gun and shot one of the men. The defendant then breaks one of the windows of the building with a tire iron, gets back in the car, and drives off. The facts of this case are much more egregious than the facts of our case. And in that case, the First District held that although the defendant's acts indicated he intended to intimidate the victim, there was no evidence that he was aware the co-defendant intended to shoot the victim. And this was despite the fact that in that case, the defendant knew that the co-defendant had a gun. I would ask that this court follow people via strata. What year was a strata? A strata was 93. I mean, that's before Fernandez. I mean, because we have Phillips in the interim, too, and the Supreme Court kind of took the Phillips, First District and Phillips to task on the way they handled. But Phillips and Fernandez, again, are common. And the court said in Fernandez, those are common, classic, common design cases where there's an agreement to an original offense and an unforeseen or not planned offense comes out of that. Here, there was no original plan. There's no original design. There's no original agreement. And the shooting came out of that. It's not a classic criminal design case at all. And Fernandez doesn't apply and Phillips doesn't apply because those cases had, I think they're both burglary, an agreement to a burglary. And then somebody is shot as a result of that. Here, it's just not that original agreement does not exist. Is Williams and the companion case, J.H., more similar to this case where there's this gang fight on the platform where the victim ends up falling and being electrocuted on the other platform? I don't specifically remember the facts of J.H., but in Williams, they did talk about the spontaneous act of somebody should be held accountable for the spontaneous acts of another person, which is what occurred in this case. Your time is up, unless we have any questions. You'll have an opportunity to make rebuttals. Thank you. Ms. Kirkkey, you may proceed. Good morning, Joan Kirkkey. On behalf of the people of the state of Illinois, counsel, we disagree with the defendant's take on the facts of this case. As to the grand jury, the grand jury- Before we get too far, I just want to ask you a question. You know, counsel argued that there's no evidence, there was no evidence presented here of an original design, both at the grand jury to, in any way, conclude there was a confession or a trial to sustain the state's burden of trial. So comment on whether there was evidence of a plan or design between these people. I think there was. Clearly, I'm not going to argue that they said, oh, let's go into the store and meet this guy. They didn't know it was a happenstance that these people came together within the store. However, there was a gang expert who testified, who talked about the culture of the gangs. Garcia was a gang member that we knew, the other defendant, the third guy we don't know anything about. And this defendant had- And the third guy, you mean the victim? No, there were three people. It was Garcia, Rebelar Vergara, and another man who came into the store together. And I think the police have never been able to identify him. But Garcia was clearly a Latin king. Defendant said, oh, I was a Latin king in Chicago, but I'm trying to extricate myself in this. But he hadn't. I mean, he still had his tattoos. He's hanging out with Garcia, a known gang member. And he was the one who instigated the whole thing by what he calls, oh, it was just, you know, back and forth. It's not like he went up to the defendant or the victim and said, excuse me, sir, would you please readjust your hat? I think it's cocked too much to the right. You know, he said, fix your shit. This is a, you know, a gang, it's a taunt. And then the woman who was behind them, Amanda, I believe her name was Peter, said she also heard something about we don't do disciples. Now, if he's no longer a gang member, then what's he doing throwing out gang parlance with them? The other thing that I think was absolutely chilling to show that there was a common design was Garcia had his hand in his pocket. The other guys had beer. They were holding, or cans of drinks. I'm not sure what it was. And the minute the victim left the store, they put the stuff down on the counter and turned almost, and I use the word lockstep. Defendant thinks that this is a legal term. It's an adjective, which means they acted as one. They acted in concert. They turned and they just went out. No one said anything to anybody among, between Garcia and Rebelar Vergara. It was like they had one thought, we're going after this guy. That was the common design that you saw executed. The minute the victim left the store, you don't see Rebelar Vergara going, hey guys, what about our drinks? We have to pay for the drinks. Didn't we come in here to get some beer? That's all forgotten. Their purpose of coming into this store. Turn, went out, and then you see the video on the outside of the store. And again, to me, it was chilling. This victim was standing there with his hands up, facing these two guys, and eventually the third guy came out. Now the third guy, you could say hesitated. You saw some hesitation by him before, the guy, we don't know who he is. He hesitated. You could see he was thinking, maybe I shouldn't do this. Eventually, he did walk out. But you see Garcia and Rebelar facing the victim, and the victim has his back to the parking lot. He's backing up, trying to get away from him with his hands up like, I don't want to be involved in anything. And for Rebelar Vergara to say, oh, we just want to engage in fisticuffs with you. That's absurd. This man didn't want to have anything to do with that. You said that, you said, I want to engage. I don't think he made any comment about what Garcia wanted to do. Correct. He said, I want, he said, excuse me. Excuse me. Rebelar Vergara made it clear repeatedly to the detective who took his statement that he wanted to engage in fighting this guy. And when the guy is standing there, like clearly not interested in engaging in any kind of a friendly fight as they want to, as the defendant wants to characterize it, he turned and ran. He left the disagreement. And you see these three guys take off running against him. The fact that Garcia at that point decided, that's not what you do when you want to have a friendly fight and someone decides they don't want to be the other part of that fight. They're running after him to beat him. And that's at least a battery, probably an aggravated battery if you have three guys on one. And the fact that Garcia pulls a gun out and shoots him and oops, this man is killed because of his, because it happened. That's first degree murder. And the grand jury, I'm sort of confused to hear the defendant say, the grand jury didn't know about his liability in this. They didn't walk into the grand jury and not tell them the charge. They said they had to tell them, we're here with a charge, a first degree murder, and it was written in the alternative. So the grand jury had to know, once they knew that Garcia was the shooter, they had to know that this, was being considered as someone who was responsible for the conduct of the other person. And so he was directly involved with that. True, the officer gave, as the court said, the questions were not models of clarity, but there was really only that one that was a compound question that you could look at it in several ways. Why is this not a confession? I mean, the officer says the defendant confessed. Where's the confession? The confession is, I wanted to engage in a fight with him. That's a confession. He's confessing to a crime. It was his intent to engage in that battery or aggravated battery, whatever it was. And that puts him involved in this act. And your role here to look at this is, you don't have to look at... Well, to me, actually, if we're going to be hyper-technical, confess to an attempt. Yes. Not the actual battery. Yes. And I did say that in my brief, that he was saying he intended, you know, it was an attempt battery. I think the page of my brief, it's in here. But I do discuss that. But the other thing is, is that your standard of review is de novo. So you are able to look, as the trial court judge did when he ruled on this, or whoever it was, you're able to look at this and say, well, looking at all the evidence, was there enough there for this grand jury to have found probable cause? And the answer is yes. It wasn't, it's not enough, you know, it's not proof beyond a reasonable doubt. It's probable cause that he was involved in this murder. You mean excluding these alleged perjured statements? Excluding them. Well, it wasn't a perjured statement. Well, that's what they alleged. They alleged in the motion that they were perjured statements. Yes. Even without them. Because there was enough there that said, first of all, and also the fact that he answered yes is acceptable, is an acceptable answer. I mean, so it was monosyllabic answers to questions that a grand jury are acceptable. One of the defendants, so they asked him, one of the defendants started flashing gang signs. He answered yes. And then. What I'm getting at, though, was your argument that when the officer testified that the defendants both confessed, the only charges before the grand jury at that moment were first-degree murder, correct? Correct. And you're saying that we should view this as the officer testifying that he confessed to attempt battery? No, he's confessing to admitting to being involved in this incident, which resulted in a first-degree murder. The common design issue. The common design issue. Not necessarily confessing to attempt battery. That's correct. I made that logical leap there because that's what Detective Grace testified to that the defendant repeatedly told him. I wanted to fight him. I wanted to, you know, engage with him. And I think when you combine his intent to Andy, look at the video, seeing this group. The grand jury didn't see the video. We're still within the box of what was presented to the grand jury. The grand jury was told that Garcia was the shooter. The grand jury was told that one person flashed gang signs. Right. And so how do we take that? There's a number of places where the question is one of them, one of them, one of them. How do we assume that the grand jury was like, okay, that must have been this defendant. That statement referred to the other defendant. You don't have to, and neither does the grand jury. The grand jury is being asked to indict for first degree murder. There's information that you as a principal or as an accessory to this or someone who's accountable for the actions. And it's clear that both of them were involved in this. They were both involved in confronting this victim. The defendant was the one who initiated the contact with this man. Right. But that's not in the grand jury transcript either. If you could just confine your answer to what's in the transcript and show me where is there substantial evidence without this line of all confessions. All right. Let me go through it. Okay. One of the defendants started, I'm standing on page three. One of the defendants started flashing gang signs at him. Yes. Okay. So we have one guy doing that. And then we know that the victim is walking backward. Fine. And the defendants are following the victim out of the store, flashing gang signs and arguing with him. This is a badly worded compound question. And you can look at it a number of ways. You can say two or more guys were doing that. One was doing one. One was doing the other. And then, but regardless, Garcia is being accused of pulling out the gun. Fine. But what you have are these, at least, you know, there are two people walking out of the store together confronting the victim. Yet Garcia is the one who pulls the trigger. So my, so this defendant is involved with Garcia when Garcia pulls the trigger. If that's the point, then what's the point of talking about whether or not the defendant confessed? Isn't that surplusage? I know. If we're talking about accountability as opposed to admitting to attempt battery? I'm sorry. Ask me that question again, please. If Garcia pulled the gun out and shot the individual. Yes. Then when, and this is based upon accountability, then it's obvious that the defendant here didn't have a gun. And therefore, he may have had a gun, but he didn't use it. And therefore, he would have been guilty as you've been arguing consistently based upon accountability or common design. And if that's the case, what is the point of asking whether or not he confessed to an attempted battery? Well, they didn't answer it. They said, did they make confessions? Well, I thought you said that you interpreted the question as being he confessed to an attempted battery. I'm saying yes, he did, because that implicates that again shows the common design that he was also intending to do. They did not tell the grand jury he confessed to. They just said he confessed. What did he confess to? He confessed to being there. He confessed to taunting this guy. He confessed to making statements to him. These are things that he confessed to that implicate him as part of this common design that show that this was not just Garcia all of a sudden going out. He told Detective Grace in detail, and at one time, he did say to him, I knew Garcia had a gun, then he backed off of it. So what did he confess to? He confessed to being there. He confessed to knowing this guy. He confessed to having been at least at one point in time a gang member saying he no longer was, but he's confessing to that. Yeah, well, I was involved. He's confessing that he knows Garcia and he's confessing to being involved with Garcia as Garcia walks out their door. He confessed to all of this. He confessed to being involved as they followed this man out the door to confront him. And is that the same thing that Garcia confessed to? Garcia confessed to shooting him. Right, but the question is, they both confessed. Is the implication that they confessed to the same thing? I don't know. But it's not perjury. No, is there an implication? I don't know how the grand jury took it. Well, if it's perjury, then this obviously is a due process violation. If there was an intentional misleading of the grand jury, the question is, if we take that out, is there still enough evidence against this defendant, Garcia? Yes, because he, if you take out the confession, if they said... If you just take out that line about the confession, yes, the defendants are following the victim out of the building. I'm going to take that out too, if you want to take that out. But that's true. One of the defendants started flashing gang signs and the victim's walking backward. They didn't say only one guy walked out of the store. They're saying that two of them walked out of the store, taunting him, flashing gang signs, confronting him. And then if all they had done was walk out of the store, taunt him, flash gang signs, and what if they had just walked out of that store as you saw in the video? They all agreed. They walked out of the store. He agreed to that. And Garcia just pulled out the gun and shot him without seeing anything else. The defendant still would have been culpable. For the spontaneous acts of another person. It wasn't spontaneous. There was this... Your scenario would certainly sound spontaneous. Not spontaneous. Because as the video will corroborate... But now the video was not shown to the grand jury. But you have to evaluate this. You're asking me questions about how would this confession be viewed? The question is whether there is sufficient evidence presented to the grand jury. So we can't look at all this other stuff. What was presented to the grand jury? That they confessed. That he confessed. Yeah, and that seems to be a problem. I don't see it as a problem. He confessed to these acts. We'll agree to disagree. Okay. I think you're doing a good job. I don't have any other questions. Okay, thank you. We're asking that the defendant's conviction be affirmed in a sense, too. Thank you. Ms. Curry? Is it Ms. or Ms.? Ms., Ms., Mrs. Ms. is generic. Whereas Ms. means you're not married or a spinster. Although you were young enough not to be one. Just briefly, as your honor has pointed out, the grand jury was told that he confessed. And the state is seeking an indictment for first degree murder. The only implication that the grand jury is to take from that is that he confessed to first degree murder. I just want to touch briefly on the gang evidence that the state brought up. Gang membership is not sufficient to establish accountability. Guilt by association is not okay. And knowing this, knowing that this gang evidence was not sufficient to establish the common design, that's why the state in closing argument made up the fact that Jose Garcia was security for the gang, that Rebelard knew he was security, and that Rebelard knew that as security, he would be carrying a gun. And as security, he would shoot Gonzalez. That is all made up. There is no evidence in the record of that. The state actually concedes in their brief that there was no evidence of that presented at trial. Yet the state mentioned Garcia as security 16 times in their closing argument and made the argument that Rebelard knew that he would have it. He had a gun and would use it to shoot Gonzalez. Just one final note. The video does not show these three people chasing Gonzalez before the shooting, as the state suggested. The shooting, the three people are running off and Gonzalez only ran, turned and ran when Garcia pulled the gun out. There was no chasing of him prior to the shooting. I just wanted to clarify that. Counsel made a comment that the defendant confessed to knowing Garcia had a gun and then retracted that statement in his statements to the police. What's your take on the record? I pointed that out in my reply brief. And if you really go back and look, it was a kind of a semantic situation where it was when he, when Rebelard knew that he had the gun. And I think that the detective went back and clarified and Rebelard consistently said throughout the statement that he did not know he had a gun. I think the state, the part picked up by the state was kind of a, I can't remember exactly, but it was a confusing situation that was later clarifying that he never admitted to knowing that he had a gun. There are no further questions, but you reverse Mr. Rebelard's conviction. Thank you. Let's take a case under advisement. There was one more oral, but.